IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAROL DILLAHAY,

                              Plaintiff,

        v.                                          1:04-cv-0063-WSD

CITY OF EASTPOINT, et al.,

                              Defendants.

## ORDER

This matter is before the Court on Defendant Michael Kucharzak's Motion

for Summary Judgment [68] and Defendants East Point Housing Authority, Barbara

Miller, Wanda Pierson, Ed Crumbley and Carrie Wisdom's Motion for Summary

Judgment [69].

## I.      BACKGROUND

Plaintiff Carol Dillihay[1] ("Plaintiff") was employed by Defendant East Point

Housing Authority (the "Housing Authority") as an Assistant Accounting System

Coordinator in the Accounting Workcenter from March 1996 until March 2002.

---

[1]  Plaintiff is erroneously denominated as "Carol Dillahay" in the case
caption.

(Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶ 1.)  Her duties included general accounting and bookkeeping tasks.  (Id. ¶ 2.)

Goodwin and Associates ("G&A") is a consulting firm based in Atlanta, which specializes in providing consultation and management assistance to public housing authorities across the country.  (Def. Kucharzak's Statement of Material Facts ("SMF") ¶ 2.)  In September 2001, G&A was contacted by the Housing Authority to analyze its Section 8 operations and to make recommendations for improvements to the Board of Commissioners of the Housing Authority (the "Board").[2]  (Id. ¶ 6.)  The Section 8 Workcenter, which is funded by the United States Department of Housing and Urban Development, provides publicly-assisted housing for persons eligible under the program to reside in private housing units.  (Id. ¶¶ 7-8.)  G&A was tasked with reviewing and updating the Housing Authority's organizational structure, job descriptions and salary plan.  (Id. ¶ 18.)

On September 25, 2001, Defendant Kucharzak, a contract employee at G&A, and Edwin Goodwin, president of G&A, began performing an onsite

_____

[2] Defendants Widner, Miller, Pierson, Crumbley and Wisdom ("Defendant Board members") served as commissioners on the Board at all relevant times.  (Housing Authority Defs.' Statement of Material Facts ("SMF") ¶ 1.)

assessment of the Housing Authority's Section 8 operations.  (Def. Kucharzak's SMF ¶¶ 5, 13-15.)  In October 2001, they determined the Housing Authority had more employees than it could afford and that a reorganization of the Section 8 Workcenter would allow fewer employees to satisfy the Housing Authority's needs.  (Id. ¶ 19.)  Defendant Kucharzak and Goodwin communicated these findings to the Board, and recommended the Board implement a reorganization. The reorganization eliminated all twenty-five existing job positions in the Section 8 Workcenter, and nine new job descriptions, with increased job responsibilities and increased pay grades, were created.  (Lemish Decl., attached to Housing Authority Defs.' Mot. for Summ. J., ¶ 12; Def. Kucharzak's SMF ¶ 20.)  Defendant Kucharzak and Goodwin believed a four-year college degree was required for the newly created positions because of the additional responsibilities and pay rates, and the Board implemented their suggestions.  (Def. Kucharzak's SMF ¶¶ 21-22.)

On December 14, 2001, the Housing Authority terminated the employment of its Executive Director, James Bolick, and Goodwin became the Interim Executive Director of the Housing Authority.  (Def. Kucharzak's SMF ¶¶ 27-28; Dillihay Decl., attached to Pl.'s Opp'n to Defs.' Mots. for Summ. J., ¶ 12.) Defendant Kucharzak served as onsite staff for Goodwin, and they were responsible for the

day-to-day operations of the Housing Authority.[3]  (Def. Kucharzak's SMF ¶ 30;

Dec. 18, 2001 Independent Contractor Assignment, attached as Ex. 2 to Pl.'s

Opp'n to Defs.' Mots. for Summ. J.)  Goodwin and Defendant Kucharzak also

were tasked with performing an evaluation of the remaining portions of the Housing

Authority's operations, including the Accounting Workcenter where Plaintiff was

employed.  (Def. Kucharzak's SMF ¶ 31.)

On January 22, 2002, after evaluating the Accounting Workcenter, Goodwin

and Defendant Kucharzak recommended that the Board reorganize the department

to improve efficiency at the Housing Authority.  (Id. ¶ 33.)  They recommended the

elimination of both positions in the Accounting Workcenter, and that one new

position with a new job description, including increased responsibilities, pay,

education and experience requirements, be created.  (Id. ¶ 34.)  The goal was to

provide for the work of the department to be done with fewer, but more capable,

people.  The reorganization called for Plaintiff's Assistant Accounting System

Coordinator position to be eliminated and replaced with a new position entitled

Financial Specialist.  (Id.)  The reorganization effectively eliminated two full-time

---

[3]  In May 2002, Defendant Kucharzak was hired directly by the Housing
Authority to be the Interim Executive Director.  (Def. Kucharzak Dep. at 25.)

positions, created one full-time Financial Specialist position, and provided for the outsourcing of the remaining accounting functions.  (Id. ¶¶ 38-39.)  Because of the increased pay and responsibilities of the proposed Financial Specialist position, Goodwin insisted the new position require the person who performed it to have a four-year college degree.  (Id. ¶¶ 35-36.)  The Board adopted these reorganization recommendations.

The reorganization of the Housing Authority involved every department, and reduced by almost two-thirds the total number of employees -- from more than twenty-five employees to nine.  (Lemish Decl. ¶ 12.)  Approximately eighteen positions filled by African-American employees and seven positions filled by Caucasian employees were eliminated.  (Id.)  Of the nine positions that existed after the reorganization, seven were filled by African-American employees and two were filled by Caucasians.  (Id.)

On January 23, 2002, Defendant Kucharzak, at the direction of the Board, sent a letter to Plaintiff which advised her of the elimination of her position, advising further:  "As vacant East Point Housing Authority positions are posted, you are encouraged to apply for any for which you meet the minimum requirements."  (Def. Kucharzak's SMF ¶ 42; Jan. 23, 2002 Letter, attached as Ex. 7 to Pl.'s Opp'n to

Defs.' Mots. for Summ. J.)  The new Financial Specialist position required, among other requirements, a "BA/BS degree in Accounting . . . ."  (Position Description, attached as Ex. 9 to Pl.'s Opp'n to Defs.' Mots. for Summ. J.)  Plaintiff did not have a bachelor's degree[4], and as a result she decided not to apply for the position.  (Def. Kucharzak's SMF ¶ 44.)  On March 8, 2002, Defendant Kucharzak wrote a letter to Plaintiff informing her that her employment with the Housing Authority had been officially terminated.  (Id. ¶ 43.)

During her employment at the Housing Authority, Plaintiff complained frequently to Defendants about perceived discrimination in the workplace and her co-workers' performance of their duties.  From 2000 through August 2001, Plaintiff complained orally to Defendant Board members that the supervisor of the Housing Authority's Section 8 housing program, Ms. Jeter, engaged in race discrimination against non-black individuals, including Housing Authority employees, as well as landlords and prospective tenants participating in the Section 8 program.  (Pl.'s SMF ¶¶ 5-8.)  In early to mid 2001, Plaintiff complained to the Defendant Board members regarding Ms. Jeter's alleged "intentional mishandling of

---

[4]  Defendant Kucharzak had access to Plaintiff's personnel file, but claims he was unaware of her prior education or experience.  (Def. Kucharzak's SMF ¶ 45.)

[S]ection 8 participants['] utility checks," other alleged "accounting discrepancies," and alleged "racist actions."  (Id. ¶¶ 6-7.)  On August 21, 2001, Plaintiff sent a letter to Mr. Bolick, at that time the Executive Director, and the Defendant Board members.  (Id. ¶¶ 8-9.)  The letter voiced a myriad of complaints, including complaints regarding Ms. Jeter's alleged discrimination against Hispanics in the issuance of Section 8 housing, and Ms. Jeter's accounting practices.[5]  (Id.)  Plaintiff mailed the letter to the Defendant Board members' home addresses.[6]  In September 2001, Plaintiff made similar complaints regarding Ms. Jeter to Defendant

---

[5]  The concluding paragraph of Plaintiff's letter states:

> This is the second time I am answering to the lies and deceit of a handful of disgruntled people.  I will not do this again.  No one should have to work under these conditions.  I will be securing an attorney as soon as possible.  This should have been stopped with the first slanderous letter that I had to respond to.  I believe you have made a mistake by having Ms. Jeter return.  None of this has anything to do with my job performance.  I do believe that some employees are discriminatory with their actions and may exhibit racist overtones in their actions and behavior.  ALL individuals are entitled to work and live where ever they desire.

(Aug. 21, 2002 Letter, attached as Ex. 14 to Pl.'s Opp'n to Defs.' Mots. for Summ. J.)

[6]  Plaintiff testified the Defendant Board members "did not like that" she sent the letters to their home addresses.  (Pl.'s Dep. V.2 at 215.)

Kucharzak.  (Id. ¶ 19.)  On December 18, 2001, Plaintiff again complained to

Defendant Kucharzak.  This time she asserted that Ms. Jeter was receiving

preferential treatment and giving preferential treatment to black employees, including

that Ms. Jeter "was given a raise backdated into a time period in which she was on

probation," and that "a merit raise [was] given [to] an employee who was on

probation."  (Dillihay Decl., attached to Pl.'s Opp'n to Defs.' Mots. for Summ. J.,

¶ 12.)  Plaintiff claims that after she made these complaints she "received a

disciplinary action by Kucharzak on January 4, 2005 [sic]."  (Id. ¶ 13.)  She further

claims she filed a grievance, but her request for a hearing in front of the Board was

denied on January 23, 2002, the same day she received her discharge letter.  (Id. ¶

13.)

    In March 2002, Defendant Kucharzak hired Ila Alfaro, a black female, as the

Financial Specialist.  (Pl.'s SMF ¶ 54.)  Ms. Alfaro had a master's degree in

finance and personnel management.  (Alfaro Resume, attached as Ex. 9 to Pl.'s

Opp'n to Defs.' Mots. for Summ. J.)  Ms. Alfaro was discharged a few months

later, on June 17, 2002.  (Pl.'s SMF ¶ 56.)  On August 16, 2002, Defendant

Kucharzak hired Henrietta Lewis, a black female, to replace Ms. Alfaro as the

Financial Specialist.[7]  (Id. ¶ 57.)  Ms. Lewis possessed a bachelor's degree in

accounting when she applied for the position.  (See Lewis Resume, attached as Ex.

11 to Pl.'s Opp'n to Defs.' Mots. for Summ. J.)

Plaintiff claims Defendants discriminated against her because of her race and

retaliated against her for complaining about discrimination, in violation of 42 U.S.C.

§ 1981 and 42 U.S.C. § 1983.[8]  Plaintiff seeks economic and emotional distress

damages, as well as punitive damages and attorneys' fees and costs.  Defendants

claim they are entitled to summary judgment because Plaintiff does not have

evidence to support her subjective belief that Defendants discriminated and

retaliated against her.  Defendant Kucharzak also claims summary judgment is

_____

[7] Defendant Kucharzak testified that he always believed the job description
for Financial Specialist should include education "or" experience, instead of
education "and" experience.  (Pl.'s SMF ¶ 58.)  Defendant Kucharzak's hiring of
Ms. Lewis occurred after he became the Interim Executive Director in May 2002.

[8] Plaintiff seeks to enforce her § 1981 rights against the municipality through
42 U.S.C. § 1983.  (See Pl.'s Opp'n to Defs.' Mots. for Summ. J. at 2 (stating
Plaintiff's claims are brought for "violation of 42 U.S.C. § 1981 directly and
through 42 U.S.C. § 1983".)  See also Webster v. Fulton County, 283 F.3d 1254,
1256 (11th Cir. 2002) ("Section 1981 is enforceable against a municipality through
42 U.S.C. § 1983.").  Plaintiff's § 1983 claim is based only on the alleged violation
of federal rights protected under § 1981.  (See Compl. ¶ 27 ("As the direct and
proximate result of Defendants' violation of 42 U.S.C.A. § 1981, Defendants' [sic]
have created liability under 42 U.S.C.A. § 1983.").)

appropriate because he did not have the authority to implement discriminatory policies.[9]

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not

---

[9] Plaintiff responds to both motions for summary judgment in one opposition brief.  The Court will analyze Defendants' motions for summary judgment at the same time, analyzing Plaintiff's claim for discrimination first, and then analyzing Plaintiff's claim for retaliation.

present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Employment Discrimination

Section 1981 prohibits intentional racial discrimination in the making and enforcement of employment contracts.  Section 1981 provides:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as

> is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, liens, and exactions
> of every kind, and to no other.
> (b) For purposes of this section, the term "make and
> enforce contracts" includes the making, performance,
> modification, and termination of contracts, and the
> enjoyment of all benefits, privileges, terms, and
> conditions of the contractual relationship.
> (c) The rights protected by this section are protected
> against impairment by nongovernmental discrimination
> and impairment under color of State law.

42 U.S.C. § 1981.

Section 1981 and Title VII have the same requirements of proof and use the same analytical framework.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); Sledge v. Goodyear Dunlop Tires N. Am., Ltd., 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (noting the same *prima facie* case and burden-shifting mechanisms apply to Title VII and § 1981 discrimination claims). Because Plaintiff has not proffered direct evidence to support her claims of discrimination, she must rely upon the McDonnell Douglas burden-shifting analysis which is used when there is only circumstantial evidence of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).  Under this framework, Plaintiff first must establish a *prima facie* case of discrimination with respect to the adverse

employment action in question.  <u>Chapman</u>, 229 F.3d at 1024.  If Plaintiff makes this *prima facie* showing, Defendants must articulate a legitimate, non-discriminatory reason for the adverse employment action.  <u>Id.</u>  "[T]he employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons."  <u>Id.</u> (quotation and citation omitted).  If Defendants satisfy this requirement, the burden then shifts to Plaintiff to show Defendants' legitimate, non-discriminatory reason is a pretext for unlawful discrimination.  <u>Id.</u>  "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."  <u>Id.</u> at 1024-25 (citation omitted).

To establish a *prima facie* case of discrimination in a reduction-in-force or reorganization context, a plaintiff must demonstrate:  (1) that she was a member of a protected group, (2) that she was qualified for her current position or to assume another position at the time of her discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate in

reaching that decision.[10]  Standard, 161 F.3d at 1331.  It is undisputed that Plaintiff satisfies the first prong of the *prima facie* case because she is a Caucasian-American.

Defendants argue Plaintiff cannot establish the second prong of her *prima facie* case -- that she was qualified for the new position -- because she did not possess a bachelor's degree in accounting[11] or have computer-network training. Defendants further argue that Plaintiff cannot establish the third prong of her *prima facie* case because she has no evidence to support her allegations that the elimination of her position and discharge were the result of racially discriminatory conduct.  Plaintiff argues the stated requirements for the Financial Analyst position were "sham qualifications," imposed by Defendants to exclude her from the

---

[10]  The *prima facie* case for discharge in a reduction-in-force context is best tailored to Plaintiff's discrimination claim because it encompasses both the discriminatory discharge and failure-to-hire aspects of her claim.  To the extent Plaintiff asserts a failure-to-hire or discharge claim, the Court's analysis is equally applicable.  See generally E.E.O.C. v. Joe's Stone Crabs, 296 F.3d 1265, 1273 (11th Cir. 2002) (stating *prima facie* case for failure-to-hire claim requires plaintiff to demonstrate "(1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class.").

[11]  It is undisputed that Plaintiff does not possess a bachelor's degree in accounting.

position because they knew she did not possess the qualifications.  Plaintiff further argues that Defendants hired two persons for the position who did not possess these requirements.

It is undisputed that Plaintiff was not qualified for the Financial Specialist position, and that Plaintiff did not apply for this position.  However, Plaintiff contends that Defendants imposed the bachelor's degree requirement for the purpose of excluding her from consideration for the Financial Specialist position.  There is no evidence to support this supposition and Plaintiff fails to meet this prong of the *prima facie* case test.  Despite her failure on this prong, the Court nonetheless will proceed to the next step of the McDonnell Douglas analysis.

If Plaintiff could establish a *prima facie* case of discrimination, Defendants are required to proffer a legitimate, non-discriminatory reason for their actions.  Defendants claim Plaintiff was discharged because "Plaintiff's position was eliminated pursuant to an agency-wide reorganization that was conducted in an effort to improve [the Housing Authority]'s customer service, financial position and assessment of its operations."  (Housing Authority Defs.' Mot. for Summ. J. at 7.)  Plaintiff admits that as part of the reorganization, Defendants eliminated all Housing Authority accounting positions, including Plaintiff's, and approved the creation of

-15-

the Financial Specialist position to replace the former accounting positions.

(Housing Authority Defs.' SMF ¶ 5.)  As part of the overall reorganization,

approximately twenty-five positions were eliminated.  Furthermore, because of the

increased pay and responsibilities Defendants determined that applicants for the

Financial Specialist position should possess a four-year degree in accounting,

Plaintiff did not possess such a degree, and, in fact, never applied for the Financial

Specialist position.  Defendants have satisfied their burden to articulate a legitimate,

non-discriminatory reason for discharging Plaintiff and for adopting requirements

for the new Financial Specialist position.  See generally Meeks v. Computer

Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994) (noting employer's burden of

production is "exceedingly light").

Defendants having satisfied their burden of articulating a legitimate, non-

discriminatory reason for their actions, to overcome summary judgment Plaintiff

must present sufficient evidence from which a reasonable juror could conclude the

reason was a pretext for unlawful discrimination.  See Hairston v. Gainesville Sun

Publ'g Co., 9 F.3d 913, 921 (11th Cir. 1993).  Plaintiff may do this "(1) by

showing that the legitimate nondiscriminatory reasons should not be believed; or (2)

by showing that, in light of all of the evidence, discriminatory reasons more likely

motivated the decision than the proffered reasons."  Standard, 161 F.3d at 1332.

"To survive summary judgment, the plaintiff must . . . present concrete evidence in

the form of specific facts which show that the defendant's proffered reason is mere

pretext.  Mere conclusory allegations and assertions will not suffice."  Earley v.

Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990); Young v. General

Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988) ("Conclusory allegations of

discrimination, without more, are not sufficient to raise an inference of pretext or

intentional discrimination where an employer has offered extensive evidence of

legitimate, non-discriminatory reasons for its actions.").

     Plaintiff's evidence of pretext consists of Defendants' hiring of one, and

after her discharge another, purportedly unqualified African-American candidate for

the Financial Specialist position.[12]  Plaintiff further claims that Defendants' stated

qualifications for the position were pretextual as evidenced by Defendants' hiring of

these two individuals who did not possess the minimum qualifications.

_____

    [12]  Plaintiff cannot establish pretext simply by demonstrating she is more
qualified than another applicant.  See generally Cooper v. Southern Co., 390 F.3d
695, 732 (11th Cir. 2004) (noting that "disparities in qualifications must be of such
weight and significance that no reasonable person, in the exercise of impartial
judgment, could have chosen the candidate selected over the plaintiff . . . .")

Plaintiff's evidence of pretext is unsupported by evidence of record, is conclusory and speculative, and, for at least three reasons, does not establish Defendant's reasons were pretextual.[13] First, Plaintiff's claim that the two African-American applicants who were hired for the position also did not possess a bachelor's degree in accounting is factually unsupported. The record evidence indicates that Ms. Alfaro, who was hired in March 2002, had a master's degree in finance and personnel management when she applied for the position. Ms. Lewis, who was hired in August 2002, possessed a bachelor's degree in accounting when she applied for the position. The Court will not question Defendants' decision that a master's degree in finance, with accounting course work, is the functional equivalent of, or superior to, a bachelor's degree in accounting, and will not second guess an employer's reasonable business decision.[14] It suffices that Defendants' hiring of Ms. Alfaro and Ms. Lewis, in light of their qualifications, does not provide a basis for finding pretext.

---

[13] The Court notes it is facially reasonable to require an applicant for the Financial Specialist position to possess a bachelor's degree.

[14] That both of these African-American employees were later discharged is not relevant here.

Second, Plaintiff's argument that pretext is evidenced by Defendants' alleged failure to enforce the hiring criteria for the African-American candidates is not persuasive.  Plaintiff relies on Carter v. Three Springs Residential Treatment, 132 F.3d 635 (11th Cir. 1998), in which the Court stated:

> We have held that the failure to promulgate hiring and promotion policies can be circumstantial evidence of discrimination.  Certainly, it is even more suspicious where it is alleged that established rules were bent or broken to give a non-minority applicant an edge in the hiring process.

Carter, 132 F.3d at 644 (citations omitted).  First, as discussed above, Carter is not applicable because the established rules were not broken for these two subsequent applicants.  They both met or exceeded the degree requirement.  To the extent the rules were broken, even though there is not evidence they were, Carter is not applicable.  Because Plaintiff never applied for the Financial Specialist position, there is no evidence as to how the job requirements would have been applied to Plaintiff or that the Housing Authority's "rules were bent or broken to give [the African-American candidates] an edge in the hiring process."  See id.

Third, to accept Plaintiff's theory of pretext is to believe the Housing Authority enacted an extensive reorganization, including the elimination of

approximately twenty-five positions and the creation of numerous new, consolidated positions, to orchestrate a scheme to discharge her.  This theory is incredible, and to subscribe a discriminatory motive to Defendants for the reorganization, instead of their stated motive of improving financial and operational efficiency, is not supported by the evidence and would constitute impermissible speculation and conjecture.  Accordingly, summary judgment for Defendants on Plaintiff's claim for employment discrimination in violation of § 1981 is appropriate.[15]  See Young, 840 F.2d at 831 ("Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer."); Standard, 161 F.3d at 1333 ("This evidence falls far short of establishing pretext in light of the proffered nondiscriminatory reasons.  A plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant.").[16]

---

[15]  Although not determinative, the Court notes that both Plaintiff and the decisionmaker here, Defendant Kucharzak, are Caucasian.

[16]  The Court does not address whether Defendant Kucharzak exercised sufficient decisionmaking authority to be liable under § 1981 because it is not

C.   Retaliation

Section 1981 supports a retaliation claim based upon a complaint of racial

discrimination.  See Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405,

1412-13 (11th Cir. 1998).  Here, Plaintiff claims Defendants terminated her

employment in retaliation for her complaints of racial discrimination.  The

McDonnell Douglas burden-shifting framework also applies to claims for retaliation.

If, after a plaintiff establishes a *prima facie* case, defendant articulates a legitimate,

non-discriminatory reason for the alleged retaliatory action, the plaintiff must then

show that the employer's proffered reasons for taking the adverse action were

actually a pretext for prohibited retaliatory conduct.

To establish a *prima facie* case of retaliation, a plaintiff must establish:  (1)

she participated in a protected activity; (2) she suffered an adverse employment

action; and (3) there is a causal connection between the participation in the

protected activity and the adverse employment decision.  Gupta v. Florida Bd. of

Regents, 212 F.3d 571, 587 (11th Cir.2000).  Here, Plaintiff claims she complained

to Defendants in August 2001 of illegal discrimination, and complained directly to

_____

necessary to do so.

Defendant Kucharzak in September 2001.  She further claims Defendant Kucharzak

recommended the Housing Authority undergo a reorganization in October 2001,

and subsequently proposed eliminating her position and establishing an accounting-

degree requirement in January 2002.  Plaintiff claims these facts establish her *prima*

*facie* case of retaliation.[17]

    The Court assumes Plaintiff's complaints of unlawful employment

practices[18] are protected activity, and that her discharge was an adverse

employment decision.  To establish the third prong of her *prima facie* case,

Plaintiff "need only show that the protected activity and the adverse action are not

completely unrelated."  Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457

(11th Cir. 1998) (internal quotation marks and citation omitted).  Plaintiff relies on

the temporal proximity of her complaints to the alleged adverse action to establish a

causal connection.  "A 'close temporal proximity' between the protected

_____

[17]  Plaintiff also claims Defendants' subsequent hiring of the two African-
American individuals is further support of her claim the discharge and hiring were
pretextual.  As discussed above, the hiring of these individuals is not evidence of
pretext.

[18]  Plaintiff expressed a myriad of complaints, including many which did not
concern racial discrimination in the workplace.  Plaintiff did, however, complain
that non-white employees were afforded preferential treatment in compensation and
discipline.

expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case.  [The Eleventh Circuit has] held that a period as much as one month between the protected expression and the adverse action is not too protracted."  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

The Court rejects Plaintiff's claim of retaliation because Plaintiff has failed to produce any evidence showing a causal connection between the reorganization of the Housing Authority and her protected activity.  Plaintiff claims she complained about racially discriminatory conduct "throughout 2000 and 2001," and continued to complain until her position was eliminated by the reorganization.  (Pl.'s SMF ¶¶ 3, 5-9.)  However, it was not until September 2001 that Defendant Kucharzak began to evaluate the Housing Authority's organizational structure, October 2001 when he recommended a reorganization, and January 2002 when he proposed the reorganization which was implemented by the Board.  Moreover, there is no evidence suggesting he considered Plaintiff's alleged complaints.  Aside from temporal proximity, Plaintiff has not presented any other evidence to establish causation.  In the absence of other evidence of pretext, this claimed temporal proximity is insufficient to establish the necessary causal connection.  See Higdon,

393 F.3d at 1221 ("By itself, the three month period between the September 29 letter and the December 31 incident does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.").[19]  In its totality, Plaintiff's theory is that the Housing Authority retaliated against her by (i) undergoing a drastic reorganization, affecting dozens of employees, and (ii) imposing a requirement that applicants for the new Financial Specialist position possess a bachelor's degree in accounting because Defendants knew Plaintiff did not possess such a degree.  Plaintiff's theory is not supported by evidence and is mere speculation and conjecture.

Even if Plaintiff could establish a *prima facie* case of retaliation, she still must demonstrate Defendants' legitimate, non-discriminatory reasons for their actions are pretextual.  For the same reasons she fails to establish a causal connection between her complaints and the alleged retaliatory conduct, and for the

_____

[19]  This case is distinguishable from those in which temporal proximity between the defendant's protected activity and the adverse action is sufficient to establish a causal connection.  See, e.g., Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791 (11th Cir. 2000).  Here, Plaintiff's protected activity was not an isolated occurrence, but instead was nearly continuous for two years before the alleged adverse action was taken.  Plaintiff's continuous complaints cannot insulate her from an adverse employment action.

same reasons she fails to establish pretext of employment discrimination, she fails to establish that Defendants' reorganization and establishment of hiring requirements are pretext for unlawful retaliatory conduct.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

## III.   CONCLUSION

For the reasons state above,

**IT IS HEREBY ORDERED** that Defendant Michael Kucharzak's Motion for Summary Judgment [68] and Defendants East Point Housing Authority, Barbara Miller, Wanda Pierson, Ed Crumbley and Carrie Wisdom's Motion for Summary Judgment [69] are **GRANTED**.

**SO ORDERED**, this 22nd day of February, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE